**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOHN WILLIAM KEITH B.,

Plaintiff,

v. No. 1:24-cv-01196-JHR

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION AND ORDER**[1]

Before the Court is Plaintiff John William Keith B.'s Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 11) ("Motion"), filed April 7, 2025. Defendant the Commissioner of the Social Security Administration ("SSA") filed a response to the Motion on June 27, 2025, and on July 10, 2025, Plaintiff filed a reply. (Docs. 16, 18.) Having considered the parties' submissions, the record, and the relevant law, and for the reasons described below, the Court will GRANT Plaintiff's Motion and REMAND the matter to the Commissioner for further proceedings.

## I. BACKGROUND

Plaintiff filed a claim for disability insurance benefits ("DIB") under Title II of the Social Security Act on October 23, 2019, alleging disability beginning on June 1, 2019, due to fibromyalgia, hypermobility syndrome, irritable bowel syndrome, acid reflux, chronic headaches, cognitive impairment, depression, anxiety, and post-traumatic stress disorder ("PTSD"). (AR 88-90.) The SSA denied Plaintiff's claim initially and on reconsideration. (AR 88, 101.) On Plaintiff's request, Administrative Law Judge ("ALJ") Richard Exnicios held a telephonic hearing on

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 8.)

September 29, 2022, at which Plaintiff and a vocational expert ("VE") testified. (AR 41-87.) On December 15, 2022, the ALJ issued a decision denying Plaintiff's claim for benefits, and on May 30, 2023, the SSA's Appeals Council denied Plaintiff's request for review. (AR 1-3, 19-34.)

Plaintiff appealed the agency's decision to this Court on July 28, 2023. *John William Keith B. v. Kijakazi*, No. 1:23-cv-00632-MV-JHR (Doc. 1, filed Jul. 28, 2023). After Plaintiff filed his opening brief, the Commissioner filed an unopposed motion to remand pursuant to sentence four of 42 U.S.C. § 405(g) on the basis that the SSA had "reviewed the case and determined that a remand for further proceedings [was] warranted." *Id.* (Doc. 17, filed Nov. 24, 2023); *id.* (Doc. 19, filed Dec. 20, 2023). The Court remanded the case to the agency pursuant to the Commissioner's motion on December 21, 2023. *Id.* (Doc. 20, filed Dec. 21, 2023).

On remand, the Appeals Council directed the ALJ to further evaluate Plaintiff's alleged symptoms and impairments and determine whether they are medically determinable and, if so, severe. (AR 1161.) The Appeals Council also directed the ALJ to "give further consideration to [Plaintiff's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (*Id.*) Finally, the Appeals Council instructed the ALJ to offer Plaintiff another hearing, "take any further action needed to complete the administrative record and issue a new decision." (*Id.*)

Pursuant to the Appeals Council's instructions, ALJ Exnicios held a second hearing by online video on August 6, 2024. (AR 1038-74.) Plaintiff and his attorney appeared from counsel's office, and Plaintiff and VE Deborah Robichaux testified. (*Id.*) On September 25, 2024, the ALJ issued a second unfavorable decision. (AR 999-1029.) Plaintiff timely appealed the ALJ's decision pursuant to 20 C.F.R. § 404.984 on November 25, 2024. (Doc. 1.)

## II. THE ALJ'S DECISION

In the decision now under review, the ALJ first found that Plaintiff met the Social Security Act's insured status requirements through December 31, 2024. (AR 1005.) He then reviewed Plaintiff's claim for DIB pursuant to the SSA's five-step sequential evaluation process ("SEP").[2] At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of June 1, 2019. (*Id.*) At step two, he found that Plaintiff has the severe impairments of: "fibromyalgia; disorders of the back and spine; thoracic and lumbar spondylosis; depression; anxiety; [PTSD]; obesity; and disorders of upper extremities—hands/carpal tunnel syndrome." (*Id.*) Also at step two, the ALJ found that Plaintiff's gastroesophageal reflux disease, irritable bowel syndrome, tension headaches, migraines and allergies are non-severe and that Plaintiff does not suffer from a neurocognitive impairment. (AR 1005-07.)

At step three, the ALJ found that none of Plaintiff's impairments or combinations of impairments meet or medically equal an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (AR 1007-11.) To assess the severity of Plaintiff's mental impairments at this step, the ALJ used the agency's Psychiatric Review Technique ("PRT") and applied the "paragraph B" criteria to evaluate the effects of Plaintiff's mental impairments on four broad areas of mental

---

[2] The five-step SEP requires the ALJ to determine whether:

(1) the claimant engaged in substantial gainful activity during the alleged period of disability;
(2) the claimant has a severe physical or mental impairment or combination of impairments that meets the duration requirement;
(3) any such impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4) the claimant can return to his past relevant work; and, if not,
(5) the claimant is able to perform other work that exists in significant numbers in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

functioning. (AR 1009-11); 20 C.F.R. § 404.1520a; 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E). Specifically, the ALJ assessed: (1) a mild limitation in understanding, remembering or applying information; (2) a mild limitation in interacting with others; (3) a moderate limitation in concentrating, persisting or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. (AR 1010-11.) Because he did not assess two or more "marked" limitations or one "extreme" limitation, the ALJ found the "paragraph B" criteria were not satisfied.[3] (AR 1011.)

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except with frequent gross manipulation (handling) and fine manipulation (fingering) with the bilateral upper extremities; work in claimant [sic] controlled environments and avoid concentrated exposure to pulmonary irritants, such as no high levels or contrary levels of odors, fumes, gases, or dusts; can understand, remember, and carry out simple, routine tasks; can use judgement to make work-related decisions; an [sic] interact frequently with supervisors, coworkers, and the general public; and can occasionally deal with changes in the work setting.

(AR 1011-12.)

In assessing Plaintiff's RFC, the ALJ reviewed the medical and non-medical record evidence. (AR 1011-28.) He also evaluated the opinions of two of Plaintiff's treatment providers and the prior administrative findings of four non-examining state agency consultants. (*Id.*) Based on this evaluation, the ALJ concluded that: (a) the December 2019 and November 2021 opinions of mental health care provider Claudia Cruz, DNP, were not persuasive; (b) the September 2020, November 2021, February 2023, March 2023 and July 2024 opinions of primary care provider Celia Andrews, FNP-BC, were not persuasive; (c) the findings of medical consultants Stanley

---

[3] The ALJ also determined that the "paragraph C" criteria were not satisfied because Plaintiff "is not shown to exhibit [marked mental] symptoms on mental status, and admits to daily activities inconsistent with such symptoms." (AR 1011); *see* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(G).

Berman, M.D., and William Harrison, M.D., were not persuasive; (d) the findings of psychological consultant Mark McGaughey, Ph.D., were not persuasive; and (e) the findings of psychological consultant Michael Hazlewood, Ph.D., were partially persuasive. (AR 1016-17, 1020-21, 1024-27.)

At step four, the ALJ found that Plaintiff has no past relevant work as defined by 20 C.F.R. § 404.1565. (AR 1028.) The ALJ therefore proceeded to step five, finding that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*) Specifically, the ALJ relied on the VE's testimony at the August 2024 hearing to conclude that Plaintiff can perform the requirements of the representative occupations of collator operator, routing clerk and marker. (AR 1028-29.) Thus, the ALJ concluded that Plaintiff has not been disabled as defined by the Social Security Act from June 1, 2019, through the date of the ALJ's decision. (AR 1029.)

**III. STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether substantial evidence supports the Commissioner's final decision and whether the Commissioner applied correct legal standards. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the Commissioner applied correct legal standards, his decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. "A decision is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Commissioner's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Also, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence." *Id.* at 1010.

## IV. ANALYSIS

In his Motion, Plaintiff asserts that the ALJ erred in two ways. (Doc. 11.) As his first claim of error, Plaintiff asserts that the ALJ improperly assessed his RFC because the ALJ accepted Dr. Hazlewood's prior administrative findings regarding Plaintiff's abilities in the broad area of sustained concentration and persistence but failed to account for all of the limitations Dr. Hazlewood found Plaintiff to have in this area. (*Id.* at 5-9.) In particular, Plaintiff argues that the

assessed RFC fails to account for Dr. Hazlewood's finding in the worksheet portion of his Mental Residual Functional Capacity Assessment ("MRFCA") that Plaintiff is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*; *see* AR 119.)

As his second claim of error, Plaintiff asserts that the ALJ improperly rejected the opinions of FNP Andrews and DNP Cruz. (Doc. 11 at 9-27.) According to Plaintiff, the ALJ erred in rejecting these opinions because he: (a) relied on activities of daily living that he mischaracterized; (b) discounted FNP Andrews' opinions for lack of objective medical evidence of fibromyalgia even though the agency acknowledges that such evidence does not exist; (c) disregarded FNP Andrews' and DNP Cruz's records supportive of their opinions as well as other providers' records consistent with the opinions; and (d) discounted DNP Cruz's reliance on Plaintiff's subjective symptom reports even though psychological practitioners routinely rely on such reports. (*Id.* at 14-27.)

In response to Plaintiff's first claim of error, Defendant argues that the RFC the ALJ assessed adequately accounts for Dr. Hazlewood's worksheet findings of sustained concentration and persistence limitations because, like the narrative portion of Dr. Hazlewood's MRFCA, the RFC includes a restriction to simple, routine work.[4] (Doc. 16 at 6-10.) In this regard, Defendant takes the position that the narrative portion of a consultant's MRFCA is more important than his worksheet findings. (*Id.* at 6-7.) In response to Plaintiff's second claim of error, in turn, Defendant contends that the ALJ properly rejected FNP Andrews' and DNP Cruz's opinions because he

[4] Defendant cites the Eighth Circuit's decision in *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018), for the proposition that the Court should not characterize opinion evidence as inconsistent with the ALJ's RFC assessment when the two can be "harmonized." (Doc. 16 at 10.) But as discussed in Section IV.D., below, Defendant fails to persuasively explain how the ALJ's RFC assessment and Dr. Hazlewood's findings can be harmonized. Nevertheless, Defendant's argument does serve as a reminder that judicial review of the Commissioner's decision is deferential.

reasonably concluded that they are not supported by or consistent with the medical record evidence. (*Id.* at 10-15.)

In his reply, Plaintiff maintains that the assessed RFC fails to adequately account for all of the limitations Dr. Hazlewood found Plaintiff to have in the broad area of sustained concentration and persistence. (Doc. 18 at 1-9.) In support, he argues that an ALJ cannot ignore a consultant's worksheet findings when they are not adequately encapsulated in the consultant's narrative discussion. (*Id.* at 3-6.) He also cites several cases in which the court held that an RFC restriction to simple, routine work did not account for a claimant's moderately limited ability to complete a normal workday and workweek without psychological interruptions and to perform at a consistent pace without unreasonable breaks. (*Id.* at 6-7.) Plaintiff further reiterates that substantial evidence does not support the ALJ's rejection of FNP Andrews' and DNP Cruz's opinions. (*Id.* at 9-12.)

As explained below, the Court agrees with Plaintiff that the ALJ erred because he accepted Dr. Hazlewood's sustained concentration and persistence findings but failed to either adequately account for these findings in the assessed RFC or explain why he did not do so. Moreover, the narrative portion of Dr. Hazlewood's MRFCA cannot constitute substantial evidence to support the assessed RFC because the narrative does not adequately encapsulate the moderate persistence-and-pace limitation Dr. Hazlewood found in the worksheet portion of the MRFCA form. The Court cannot say this error is harmless and it thus requires remand.[5]

[5] The Court will not address Plaintiff's second claim of error regarding the ALJ's rejection of FNP Andrews' and DNP Cruz's opinions because it may be affected on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). However, in the interest of forestalling future error, the Court notes that several statements in the ALJ's decision appear to either misstate or mischaracterize evidence the ALJ relied on to reject DNP Cruz's and FNP Andrews' opinions. *See, e.g., Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987) (holding that ALJ's decision was not supported by substantial evidence because, among other things, ALJ mischaracterized evidence); *Stills v. Astrue*, 476 F. App'x 159, 161 (10th Cir. 2012) (holding that Appeals Council's factually incorrect reasoning was not supported by substantial evidence).

For example, one of the reasons the ALJ gave for rejecting DNP Cruz's December 2019 opinion is the absence of any "explanation or allegation of symptoms to support" PTSD. (AR 1017.) But in February 2016, Stephen Chesire, Ph.D.,

A. Dr. Hazlewood's Prior Administrative Findings

In alignment with steps two and three of the SEP, Dr. Hazlewood first applied the agency's PRT to conclude that Plaintiff has medically determinable mental impairments that do not meet or medically equal a listing. (AR 111-14.) Thus, he proceeded to conduct a MRFCA in alignment with step four of the SEP. (AR 118-22.) The MRFCA form directs psychological consultants to first record "worksheet" findings about the limiting effects, if any, of the claimant's mental impairments on twenty work-related mental abilities within the four broad areas of mental functioning listed in the PRT.[6] (AR 118.) Then, the form directs consultants to craft a "narrative" mental RFC describing how the evidence supports their conclusions. (*Id.*)

---

noted as a source of PTSD that Plaintiff suffered "significant emotional and verbal abuse" by his mother as a child (AR 885); in June 2022, DNP Cruz noted a "[t]rauma [h]istory" of "[n]eglect and emotional abuse" by Plaintiff's first wife (AR 857); and from September 2023 to June 2024, DNP Cruz documented many PTSD symptoms Plaintiff was experiencing. (AR 1343, 1347, 1351, 1355, 1359, 1363.) The ALJ also stated that no provider "documented objective signs or symptoms" to support DNP Cruz's opinion (AR 1017), despite multiple findings of abnormal mood and affect on providers' mental status examinations of Plaintiff. (*See, e.g.*, AR 430, 436, 441, 446, 645, 651, 657, 663, 668, 676, 680, 751, 989.) And in rejecting DNP Cruz's November 2021 opinion, the ALJ stated that DNP Cruz "regularly described [Plaintiff] as doing well and stable" (AR 1020), without accounting for or rejecting the many times she described Plaintiff as having difficulty during the same periods. (*See, e.g.,* AR 694-95, 696, 717, 720, 723, 728, 731, 735, 737, 739, 741, 797, 807, 809.)

Likewise, in rejecting FNP Andrews' September 2020, November 2021 and July 2024 opinions, the ALJ relied on notations that Plaintiff "regularly" traveled to Florida and took care of his youngest daughter. (AR 1021, 1025.) But the records to which the ALJ cited do not establish regular trips to Florida; and Plaintiff testified to and reported only two. (AR 61-63, 69-70, 480-81, 592, 705, 996, 1047, 1371.) Additionally, the ALJ failed to acknowledge uncontradicted testimony and record evidence that Plaintiff struggled to travel and to parent his daughter and participated in these activities in significantly limited ways due to his impairments. (*See, e.g.,* AR 57-58, 62, 69-70, 275, 551, 553, 717, 1046-47, 1050, 1291, 1302-03, 1338, 1341, 1343, 1355.) The ALJ also discounted Plaintiff's headaches and migraines on the basis that Plaintiff did not complain of or seek treatment for them until April 2024. (AR 1006, 1024, 1415, 1421.) But the record evidence shows that Plaintiff (a) complained of recurrent migraines no later than December 2015; (b) received treatment for headaches no later than January to March 2020; and (c) reported having tried many other prescription medications for headaches and migraines prior to April 2024. (AR 77, 519, 522, 526, 532, 534, 538, 543, 546, 549, 553, 561, 872, 1415.)

[6] The MRFCA form's instructions state:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

In the worksheet portion of his MRFCA, Dr. Hazlewood found that Plaintiff has sustained concentration and persistence limitations. (AR 118-19.) Specifically, Dr. Hazlewood found that Plaintiff is moderately limited in his ability to: (a) maintain attention and concentration for extended periods; (b) work in coordination with or in proximity to others without being distracted by them; and (c) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 119.) He also found that Plaintiff has moderate limitations in the broad area of social interaction, specifically, in his ability to interact appropriately with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors. (AR 120.)

In each narrative section of the MRFCA form, Dr. Hazlewood wrote, "see summary below." (AR 118-20.) Then, in the "MRFC – Additional Explanation" section of the form, he offered a partial summary of the record evidence, noting, among other things, "long-standing outpatient mental health care … coupled with primary care monitoring of psychiatric status," "diagnoses of dysthymic disorder, generalized anxiety disorder, and [PTSD] and active pharmacology therapy," and "persistent subjective complaints and exam findings related to anxiety and mood disturbance," but no documentation of "psychiatric hospitalization, … acute or urgent psychiatric issues or crises," unremarkable "appearance, social behavior, speech-communication, thought content, thought process, insight, judgment, [and] general cognitive function" on mental status examination, and "effective pharmacological management of presenting psychiatric symptoms." (AR 121-22.) However, among other things, Dr. Hazlewood did not acknowledge

---

(AR 118.) The Court notes that in the "explanatory text boxes" to which these instructions refer, Dr. Hazlewood merely wrote, "[s]ee summary below." (AR 118-20.)

Plaintiff's diagnosis of recurrent major depressive disorder. (AR 121-22; *see, e.g.,* AR 341, 418, 861, 1346.) He also did not discuss record evidence directly relevant to the persistence-and-pace limitation he found in the worksheet portion of the MRFCA form, including evidence that Plaintiff performs activities of daily living slowly, requires frequent rest breaks and daily two-hour naps, and was ultimately unable to complete a normal workday and workweek while working at his father's insurance agency. (AR 121-22; *see, e.g.*, AR 56-61, 70-75, 246-47, 274-75, 678, 680, 1045, 1053-54, 1056-57, 1067-68, 1337-38, 1340-41.)

On the basis of his partial summary of the record evidence, Dr. Hazlewood concluded that Plaintiff's

> [m]ental limitations are regarded as no more than moderate in severity. Evidence supports capacity, at least, to perform simple, routine and repetitive work-related tasks in a setting involving incidental social interaction, little judgment, and direct and concrete supervision.

(AR 122.)

B. The ALJ's Evaluation of Dr. Hazlewood's Findings

As noted in Section II., above, the ALJ evaluated Dr. Hazlewood's findings in assessing Plaintiff's RFC and found them "partially persuasive." (AR 1026-27.) The ALJ accepted Dr. Hazlewood's sustained concentration and persistence findings, observing that Plaintiff's "combination of conditions could reasonably support some difficulty with sustained concentration when performing more than simple-type tasks, which is consistent with Dr. Hazelwood's assessment." (AR 1027.) However, the ALJ disagreed with Dr. Hazlewood's findings regarding two other areas of work-related mental functioning, assessing less limitation in one area and greater limitation in the other. First, the ALJ disagreed with Dr. Hazlewood's findings that Plaintiff has social interaction limitations, concluding that "the overall medical evidence does not support any

work-related social interaction difficulties due to social dysfunction." (*Id.*) Second, the ALJ disagreed with Dr. Hazlewood's assessment that Plaintiff has no adaptation limitations, stating that

> in giving consideration to his diagnoses, negative response to situational stressors, and ongoing need for mental health treatment, [Plaintiff] could reasonably have some difficulty in response to work stressors caused by more than frequent social interactions and handing [sic] more than occasional changes.

(*Id.*)

C. Relevant Law

In some instances, an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). In *Vigil*, "the ALJ accounted for [the plaintiff's] moderate concentration, persistence, and pace problems" that the ALJ had identified at step three "by limiting him to unskilled work" in assessing his RFC prior to step four. 805 F.3d at 1203-04. The *Vigil* court upheld the ALJ's decision, reasoning that the restriction to unskilled work adequately accounted for the plaintiff's limitations in light of the evidence regarding his mental status because concentration is "not critical" to the performance of such work *Id.* at 1204. The *Vigil* court recognized, however, that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id.*

In *Smith*, the Tenth Circuit relied on *Vigil* to reject the plaintiff's argument that, in assessing her RFC, the ALJ failed to adequately account for a psychological consultant's MRFCA findings of moderate mental limitations. 821 F.3d at 1268-69. The consultant in that case found that the plaintiff had nine moderate work-related mental limitations, including sustained concentration and persistence limitations. *Id.* at 1268. The ALJ "did not repeat the moderate limitations" the consultant found but instead "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities," restricting her to "simple, repetitive, and

routine tasks" and no "face-to-face contact with the public." *Id.* at 1269. The *Smith* court determined that "[t]his approach is acceptable" in the Tenth Circuit. *Id.*

Prior to *Vigil* and *Smith*, the Tenth Circuit had expressed doubt that the "vague catch-all term" of "simple work" would be "sufficient to capture … various functionally distinct mental limitations," including in the area of "[a]ttention and concentration." *Chapo v. Astrue*, 682 F.3d 1285, 1289-90 & n.3 (10th Cir. 2012). And the court had twice found that a limitation to simple, unskilled or routine work was insufficient to account for assessed moderate limitations in the broad area of sustained concentration and persistence. *Jaramillo v. Colvin*, 576 F. App'x 870, 876–77 (10th Cir. 2014); *Wiederholt v. Barnhart,* 121 F. App'x 833, 839 (10th Cir. 2005).[7] In *Evans v. Colvin*, 640 F. App'x 731 (10th Cir. 2016), the court harmonized *Vigil* with the principles applied in *Jaramillo*, *Wiederholt*, and other earlier cases and helpfully clarified that

> in general, limiting a claimant to unskilled work will not sufficiently convey the degree of a claimant's mental impairments …. But a restriction to unskilled work can account for a mental impairment in an appropriate case, for example, when the relationship between skill level and mental capacity is obvious … or when an ALJ credits a medical-source opinion that a claimant's concentration deficit does not affect the ability to do unskilled work[.]

*Id.* at 738. In other words, courts must determine on a case-by-case basis whether an RFC restriction to a particular type of work adequately accounts for "all impairments found by the ALJ and supported by the record." *Victoria A. E. v. Bisignano*, Civ. No. 24-1237, 2026 WL 851404, at *9 (D.N.M. Mar. 27, 2026) (Sweazea, J.). Further, although an ALJ "can sometimes account for mental limitations by limiting the claimant to particular kinds of work … [u]nless the connection (between the limitation and the work) is obvious, … the [ALJ] must ordinarily explain how a work-

[7] In the Tenth Circuit, unpublished decisions are not binding precedent but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

related limitation accounts for mental limitations reflected in a medical opinion." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019).

Importantly, when a psychological consultant finds that a claimant's ability to perform a particular work-related mental function is "moderately limited" in the worksheet portion of his MRFCA, he is finding that the claimant's ability to perform that function is "impaired."[8] POMS DI § 24510.063(B)(2)[9]; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[A] moderate impairment is not the same as no impairment at all."). If a consultant determines that a claimant is moderately limited in the ability to perform a work-related mental function, he must describe the "degree and extent of the capacity or limitation" in his narrative discussion. *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. Aug. 25, 2016) (Vidmar, J.) (quoting POMS DI § 24510.063(B)(2)). "In other words, the [consultant] must incorporate all of his [worksheet] findings into his … narrative RFC assessment," including his findings of moderate limitations. *Id.*

In considering a psychological consultant's prior administrative findings, an ALJ may rely exclusively on the consultant's narrative discussion in his MRFCA when the narrative is consistent with and adequately reflects the limitations he has found in the worksheet portion of the MRFCA

---

[8] In a psychological consultant's MRFCA, a finding of "moderately limited" falls between a finding of "not significantly limited," on the one hand, and a finding of "markedly limited," on the other. POMS DI § 24510.063(B)(1)-(3). "Not significantly limited" means that "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity" while "markedly limited" means that "the individual cannot usefully perform or sustain the activity." *Id.* (emphasis omitted). In contrast, when a consultant applies the SSA's PRT, he uses a "five-point rating scale" of no, mild, moderate, marked, or extreme limitation. 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(F)(2). According to this scale, "moderate limitation" means that a claimant's functioning in the area at issue is "fair" and falls between "[m]ild limitation," *i.e.*, the claimant's functioning is "slightly limited," and "[m]arked limitation," *i.e.,* the claimant's functioning is "seriously limited." *Id.* § 12.00(F)(2)(b)-(d). Here, Plaintiff does not challenge either Dr. Hazlewood's or the ALJ's application of the PRT. (*See generally* Docs. 11, 18.) Thus, the meaning of "moderate limitation" under the PRT's five-point rating scale is not at issue.

[9] The SSA's Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F. 3d 764, 766 (10th Cir. 1999). The Court must "defer to the POMS provisions unless [it] determine[s] they are arbitrary, capricious, or contrary to law." *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quotation marks omitted).

form. *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447-48 (10th Cir. 2021); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015); *Bosse v. Saul*, Civ. No. 18-475, 2019 WL 3986046, at *4 (D.N.M. Aug. 23, 2019) (Fashing, J.). Conversely, "if a consultant's … narrative fails to describe the effect that each of the [worksheet] moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in [the worksheet portion], the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015); *see also Carrillo v. Saul*, Civ. No. 19-292, 2020 WL 6136160, at *10 (D.N.M. Oct. 19, 2020) (Sweazea, J.) (noting that an internally inconsistent opinion "cannot be substantial evidence that supports the ALJ's assessment of [the p]laintiff's RFC").[10] These principles flow logically from the fact that "[a]t the ALJ-stage (and thereafter) the *entire* MRFCA form—all of the findings on the MRFCA form—is considered the doctor's 'opinion.'" *Silva*, 203 F. Supp. 3d at 1159 (emphasis in original).

D. <u>The ALJ Erred by Failing to Account for Dr. Hazlewood's Persistence-and-Pace Finding</u>

Plaintiff claims that the ALJ erred when he accepted Dr. Hazlewood's sustained concentration and persistence findings but failed to either adequately account for those findings in the RFC he assessed or explain why he did not do so. As noted above, it is undisputed that in the worksheet portion of his MRFCA, Dr. Hazlewood found that Plaintiff is moderately limited in his ability to attend and concentrate for extended periods and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[11] (AR 119.) But the

---

[10] *But see, e.g., Rush v. Saul*, 389 F. Supp. 3d 957, 968-69 & n.7 (D.N.M. 2019) (Yarbrough, J.) (rejecting *Carver* and holding that ALJ was not required to either account for consultant's worksheet findings or explain why he failed to do so).

[11] As previously noted, Dr. Hazlewood also found that Plaintiff is moderately limited in his ability to (1) work in coordination with or in proximity to others without being distracted by them, (2) interact appropriately with the general public and (3) accept instructions and respond appropriately to criticism from supervisors. (AR 119-20.) The ALJ's

parties dispute whether the ALJ's inclusion of a restriction to "simple, routine tasks" in the RFC he assessed adequately accounts for these sustained concentration and persistence findings. (Doc. 11 at 5-9; Doc. 16 at 4-10.) For the following reasons, the Court concludes that it does not.

Initially, it is not wholly clear that the ALJ's inclusion of a restriction to simple, routine work in the RFC he assessed adequately accounts for Dr. Hazlewood's finding that Plaintiff is moderately limited in his ability to attend and concentrate for extended periods. *See, e.g., Ortiz v. Kijakazi*, Civ. No. 21-1016, 2023 WL 2538834, at *9 (D.N.M. Mar. 16, 2023) (Khalsa, J.) (noting "a lack of clarity" in the law regarding whether an RFC restriction to "simple, routine, and repetitive work" adequately accounts for "a moderate limitation in maintaining attention and concentration for extended periods"); *Saiz v. Kijakazi*, Civ. No. 21-681, 2022 WL 4235325, at *8-*10 (D.N.M. Sept. 14, 2022) (Sweazea, J.) (noting that "the question … whether a limitation to simple, routine tasks and simple work decisions with no fast-paced production work accommodates a moderate limitation in maintaining attention and concentration for extended periods … does not have an entirely straightforward answer"); *see also Garza v. Saul*, Civ. No. 19-699, 2020 WL 5518837, at *13 (D.N.M. Sept. 14, 2020) (Robbenhaar, J.) (finding that *Vigil* does not allow ALJs to merely "collapse" multiple mental limitations, including in the area of sustained concentration and pace, into an RFC restriction to "simple, routine, repetitious work, with 1, 2, or 3 step instructions, in an environment requiring few decisions").[12]

---

inclusion in the assessed RFC of a restriction to frequent interactions with supervisors, coworkers and the general public obviously relates to the first limitation, and the ALJ rejected the two other limitations. (AR 1011-12, 1027.) Moreover, Plaintiff has not challenged the ALJ's decision in these respects. (*See generally* Docs. 11, 18.) Thus, the Court need not decide whether the assessed RFC adequately accounts for the first limitation and whether the ALJ properly rejected the other two.

[12] Some of the undeniable variability in cases addressing whether a restriction to simple work adequately accounts for moderate limitations in the broad area of sustained concentration and persistence may reasonably be due to differences in the factual record supporting the moderate limitations at issue. *See Hawkins v. Kijakazi*, Civ. No. 20-1259, 2022 WL 17729918, at *8 (D.N.M. Dec. 16, 2022) (Ritter, J.) ("*Vigil* shows that limiting a claimant to unskilled work can

However, even if it does, Dr. Hazlewood's finding that Plaintiff is also moderately limited in his ability to complete a normal workday and workweek without psychological interruptions and perform at a consistent pace without unreasonable breaks requires some additional accommodation or explanation in the context of this case. As Plaintiff notes, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods is a mental ability needed for any job, including unskilled work, and "[t]hese requirements are usually strict."[13] (Doc. 11 at 8); *see* POMS DI § 25020.010(A)(3)(a), (B)(2)(a), (b), (B)(3)(c)-(f), (h)-(*i*). In other words, an employee must have this ability even if he is restricted to simple, routine work. A number of courts have thus found that a restriction to simple, routine work did not adequately account for a claimant's moderate limitation in this ability. *See, e.g.*, *Peterson v. Saul*, Civ. No. 19-486, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020) (Robbenhaar, J.); *Cordova v. Berryhill*, Civ. No. 17-611, 2018 WL 2138647, at *8 (D.N.M. May 9, 2018) (Vidmar, J.); *Saavedra v. Berryhill*, Civ. No. 16-822, 2018 WL 324236, at *7 (D.N.M. Jan. 8, 2018) (Fashing J.).

Further, as noted in Section IV.C., above, an ALJ must explain how a work-related restriction accounts for a mental limitation reflected in a medical source opinion unless the connection between the mental limitation and the work-related restriction is obvious. *Parker*, 772 F. App'x at 616. And on the record in this case, it is not obvious how a restriction to simple, routine work would adequately account for the persistence-and-pace limitation Dr. Hazlewood found. In particular, it is unclear how Plaintiff's recurrent major depressive disorder or PTSD would be less

account for certain mental limitations, but that does not mean an ALJ can use the requirements of unskilled work as a substitute for careful factual analysis.").

[13] In contrast, as the Tenth Circuit noted, SSA guidance indicates that the ability to sustain concentration is "not critical" to the performance of simple work. *Vigil*, 805 F.3d at 1204.

likely to interrupt his workday, workweek or pace if he were restricted to performing unskilled, repetitive work. This is particularly true in light of significantly probative record evidence that Plaintiff performs simple tasks slowly, requires frequent breaks and daily naps, and was ultimately unable to complete a normal workday and workweek while working at his father's business. (AR 56-61, 70-75, 246-47, 274-75, 678, 680, 1045, 1053-54, 1056-57, 1067-68, 1337-38, 1340-41.) Nevertheless, the ALJ made no attempt to explain how the assessed RFC's restriction to simple work adequately accounted for the persistence-and-pace limitation Dr. Hazlewood found.

Of course, in the narrative portion of his MRFCA, Dr. Hazlewood did state that Plaintiff can "perform simple, routine and repetitive" work. (AR 122.) And the ALJ appears to have relied on this narrative in concluding that Plaintiff can perform simple, routine tasks without any restrictions relating to persistence or pace. (AR 1011-12, 1027.) However, for the following reasons, Dr. Hazlewood's narrative cannot constitute substantial evidence to support the ALJ's RFC assessment in the context of this case.

As noted in Section IV.C., if a psychological consultant's narrative fails to reflect the effect of the limitations recorded in the worksheet portion of the MRFCA form on the claimant's ability to work, then the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding. *Carver*, 600 F. App'x at 619. And here, as explained below, Dr. Hazlewood's narrative does not reflect the effect on Plaintiff's ability to work of Plaintiff's moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as Dr. Hazlewood found in the worksheet portion of his MRFCA.

Initially, the summary of the record evidence in Dr. Hazlewood's narrative does not appear to include any evidence that relates directly to Plaintiff's impaired ability to sustain persistence and pace throughout a normal workday and workweek. (*See* AR 121-22.) For example, again, the summary does not refer to record evidence that Plaintiff performs basic tasks slowly, requires frequent breaks and daily naps, and was ultimately unable to complete a normal workday and workweek while working at his father's business. (*Id.*) Further, the inclusion in Dr. Hazlewood's narrative of a restriction to simple, routine and repetitive work does not adequately account for the persistence-and-pace worksheet limitation he found because again, it is not obvious how Plaintiff's mental impairments would be less likely to interrupt his workday, workweek or pace if he were restricted to performing unskilled work.[14] Yet Dr. Hazlewood made no attempt to explain how the prescribed restriction might account for the limitation he found.[15] Thus, absent further explanation, the ALJ could not properly rely on Dr. Hazlewood's narrative to support his RFC assessment that Plaintiff can persist and maintain pace at simple, routine work. *Carver*, 600 F. App'x at 619.

In sum, as Plaintiff argues, the ALJ accepted Dr. Hazlewood's prior administrative findings regarding sustained concentration and persistence, yet the RFC he assessed did not adequately account for at least one of the limitations the consultant found in this area, *i.e.*, a moderate limitation in Plaintiff's ability to persist and maintain pace. In particular, the ALJ's inclusion of a restriction to simple, routine work in the assessed RFC did not adequately account for the sustained

---

[14] That Dr. Hazlewood's narrative fails to adequately reflect his worksheet findings materially distinguishes this case from, for example, *Sandoval v. Berryhill*, Civ. No. 15-294, 2017 WL 4772412 (D.N.M. Oct. 23, 2017) (Ritter, J.), in which the Court found that, though it was a "close[] call," the consultants' narratives did adequately reflect their worksheet findings. *Id.* at *8.

[15] The Court does note that, in his MRFCA narrative, Dr. Hazlewood restricted Plaintiff not only to simple, routine work, but also to work with "incidental social interaction, little judgment, and direct and concrete supervision." (AR 122.) But even if these additional restrictions could account for all of the moderate sustained concentration and persistence limitations he found – a proposition that is neither clear nor explained – the ALJ did not include any of them in the RFC he assessed. (AR 1011-12.)

concentration and persistence limitations he accepted, because in light of the record evidence in this case: (a) the connection between the persistence-and-pace limitation Dr. Hazlewood found and the restriction to simple, routine work is not obvious and the ALJ did not explain it; (b) Dr. Hazlewood's narrative does not reflect the persistence-and-pace worksheet limitation; and thus, (c) without further explanation, the ALJ could not properly rely on Dr. Hazlewood's narrative conclusion that Plaintiff can perform simple work. Nor did the ALJ offer any other explanation regarding whether he intended to account for the limitation or how a restriction to simple work might accomplish that end.

When, as here, an ALJ assessing an RFC fails to either adequately account for a moderate limitation found by a psychological consultant or explain why he rejects it, the ALJ leaves the Court without a sufficient basis to determine that appropriate legal principles have been followed. *Lucero v. Saul*, Civ. No. 20-518, 2021 WL 2589130, at *14 (D.N.M. June 24, 2021) (Khalsa, J.); *Vienna v. Saul*, Civ. No. 18-783, 2019 WL 4686718, at *6 (D.N.M. Sept. 26, 2019) (Fashing, J.); *see also Pinto v. Kijakazi,* Civ. No. 20-1095, 2022 WL 15273064, at *6 (D.N.M. Oct. 27, 2022) (Ritter, J.) (holding that ALJ erred "by formulating a residual functional capacity … which was inconsistent with the medical and agency findings he purported to adopt as persuasive"). In these circumstances, the case must be remanded so that the ALJ can supply adequate reasons for his decision.

The Commissioner does not argue that any error the ALJ may have made was harmless. (*See generally* Doc. 16.) But even if the Commissioner had made such an argument, the Court would reject it with respect to the error just discussed. In the Tenth Circuit, courts "apply harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

> [H]armless error analysis ... may be appropriate to supply a missing dispositive finding where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Id.* at 733-34 (quotation marks and ellipsis omitted). But courts "cannot attempt to supply a missing finding for the ALJ on legal or evidentiary matters that he did not consider because it risks violating the general rule against post hoc justification of administrative action." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006) (quotation marks omitted).

Here, if the ALJ had properly considered and addressed Dr. Hazlewood's prior administrative findings in his RFC assessment, he may have decided to account for the consultant's finding that Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is impaired to some degree. And if he had done so, this may have resulted in a more restrictive RFC in terms of persistence and pace.

Then, as Plaintiff argues, a more restrictive RFC may have precluded Plaintiff from performing competitive work and thus resulted in a finding of disability. (Doc. 11 at 8.) At Plaintiff's August 2024 hearing, the VE testified that to sustain competitive employment, an employee (a) is limited to two 15-minute breaks per day, (b) must be off-task less than 15% of the workday, (c) cannot be absent more than once in the first 90 days of employment, and (d) cannot be absent more than five to ten days in the first calendar year. (AR 1072-73.) But Dr. Hazlewood's findings could support the conclusion that, due to his mental impairments, Plaintiff would be unable to adhere to one or more of these strict persistence-and-pace requirements. The Court therefore finds that the ALJ's error was not harmless and warrants remand.

## V. CONCLUSION

For all of the above reasons, Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 11) is GRANTED and this matter is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

HON. JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE